[Civ. No. 18484. Fourth Dist., Div. One. Nov. 21, 1979.]

JOHN HUCKELL et al., Plaintiffs and Respondents, v.
MARY JANE MATRANGA, Individually and as Conservator, etc.,
et al., Defendants, Cross-complainants and Respondents;
BANK OF AMERICA, Defendant, Cross-defendant and Appellant.

474

COUNSEL

George W. Coombe, Jr., Harris B. Taylor, Alfred T. Twigg and Kenneth H. Wechsler for Defendant, Cross-defendant and Appellant.

Roark & Legler and Thomas Tomlinson for Plaintiffs and Respondents.

Stanley G. Lerner for Defendants, Cross-complainants and Respondents.

OPINION

COLOGNE, J.—Bank of America National Trust and Savings Association (Bank) appeals a judgment against it which awarded attorney's fees to John and Evelyn Huckell in their quiet title action.

On February 10, 1969, Huckells bought a parcel of real property from Belle Scofield and opened an escrow at the Bank's branch in Chula Vista. To evidence the unpaid balance of the purchase price, Huckells signed a promissory note in the amount of $7,000 payable to Scofield and also executed a deed of trust designating the Bank as trustee and Scofield as beneficiary. The trust deed was duly recorded.

Scofield died leaving her interest in the note to certain heirs whose interests eventually devolved to Mary Jane Matranga, individually and as conservator of the person and estate of Nell P. Zick, and to Emmett W. Horton (sometimes referred to collectively as beneficiaries). In time the note was paid in full and Huckells sought reconveyance of the interest of the trustee. The original note could not be found.

Before it would execute a reconveyance, the Bank demanded a request for reconveyance executed by the beneficiaries, the original note, a copy of the trust deed and a $25 reconveyance fee. Since the note had been lost, the Bank offered to accept a "Lost Instrument Indemnity Bond" in lieu of the original note.

Huckells delivered to the Bank the request for reconveyance executed by the beneficiaries, a copy of the note and deed of trust and an indemnity agreement signed by the beneficiaries and their counsel. The Bank refused to accept a personal indemnity agreement, demanding instead a bond executed by a corporate surety company. Huckells brought this action to quiet title and sought attorney's fees. Summary judgment quieting title to the real property was granted on motion and the only issue which went to trial was the matter of damages. The trial court made a finding the Bank acted with "vexation and oppressive conduct" when it insisted on a corporate surety bond "without even making inquiry into the adequacy of the security presented." The court awarded the Huckells $1,400 attorney's fees plus a $300 penalty pursuant to Civil Code section 2941, and costs, and awarded the beneficiaries $1,400 as against the Bank by way of indemnity under the cross-complaint.

■ When the note with a deed of trust is satisfied, the beneficiaries are required to execute a request for reconveyance and deliver it to the trustor together with the note and deed of trust marked paid or satisfied (Civ. Code, § 2941).[1] The purpose of this requirement is to provide the trustors the proof they need to be sure the debt has been fully paid and free them from the liability if the original note was transferred to a bona fide purchaser for value.

---

[1]Civil Code Section 2941 reads, in part: "(a) When any mortgage or deed of trust has been satisfied, the mortgagee or beneficiary, or his assignee, must, on the demand of the mortgagor or trustor, or upon the demand of the owner of the land execute,. acknowledge, and deliver to him a certificate of the discharge thereof, or a request to the trustee for a full reconveyance, so as to entitle such certificate to be recorded or a full reconveyance to be executed by the trustee, or he must enter satisfaction, or cause satisfaction of such mortgage to be entered of record; and any mortgagee or any beneficiary under a deed of trust, or his assignee, who for a period of 30 days refuses to

The note subject of this action carried the legend printed in bold letters at the top:

"Do Not Destroy This Note

"When paid, *this note,* with Deed of Trust securing same, *must be surrendered to Trustee* for cancellation and retention, before reconveyance will be made." (Italics added.) At the top of the reverse side of the trust deed, there is the following language: *"To obtain a Full Reconveyance* of this Deed of Trust *present to the trustee* this request properly executed, the Deed of Trust, *the original Note* secured by said Deed of Trust and any other evidence of indebtedness secured thereby, together with reconveyance fee." (Italics added.)

Thus, it should be noted the parties knew or should have known that the original note would be required in order to secure a reconveyance. The trustee's reconveyance without obtaining the original note would certainly be deemed to be an act contrary to the terms of the deed of trust.

---

execute, acknowledge, and deliver to the mortgagor, or, also, to the owner of the land the certificate of discharge, or to enter satisfaction, or cause satisfaction of the mortgage to be entered, as provided in this chapter or to request a full reconveyance from the trustee pursuant to the terms of the deed of trust, is liable to the mortgagor or trustor, or to the owner of the land, as the case may be, or his grantees or heirs, for all damages which he or they may sustain by reason of such refusal, and shall also forfeit to him or them the sum of three hundred dollars ($300). The mortgagee or the beneficiary under a deed of trust, his assignee or personal representative, shall deliver to the mortgagor or trustor, his heirs, successors or assigns, the mortgage or deed of trust and the note so paid or satisfied.

"(b) Upon execution of a full reconveyance by a trustee under a deed of trust, or of a certificate of discharge by a mortgagee, the trustee or mortgagee shall record or cause to be recorded such full reconveyance or certificate of discharge in the office of the county recorder in which the deed of trust or mortgage is recorded unless (1) the trustee or mortgagee has received instructions to the contrary from the trustor or mortgagor, or the owner of the land, as the case may be, or from the owner of the obligation secured by the deed of trust, his agent or escrow, or (2) such full reconveyance or certificate of discharge is to be delivered to the trustor or mortgagor, or the owner of the land, as the case may be, through an escrow to which such trustor, mortgagor or owner is a party. The failure of a trustee or mortgagee to comply with the provisions of this subdivision shall make him liable to the trustor or mortgagor, or the owner of the land, as the case may be, or his grantees or heirs, for all damages which he or they may sustain by reason of such failure, and shall also forfeit to him or them the sum of three hundred dollars ($300)."

In 1978 the Legislature revised section 2941 providing a slightly different procedure to conform to modern practices, and it now reads: "(a) When any mortgage has been satisfied, the mortgagee or the assignee of the mortgagee shall execute a certificate of the discharge thereof, as provided in Section 2939, and shall record or cause to be recorded, except as provided in subdivision (c), such certificate in the office of the county

■ When a trustee improperly reconveys a deed of trust to the trustor before the secured obligation is satisfied, and the trustor subsequently conveys the property to a bona fide purchaser, the grantee receives his title free and clear of the lien (*Firato* v. *Tuttle,* 48 Cal.2d 136 [308 P.2d 333]; 1 Miller & Starr, Cal. Real Estate (rev.), § 3.76, p. 465). In such cases, the beneficiaries' interests in the property are terminated and their recourse is limited to the collection of an unsecured debt from the trustor and/or damages against the *trustee* for the loss of the security (*Doyle* v. *Surety Title & Guar. Co.,* 261 Cal.App.2d 525, 528 [68 Cal.Rptr. 177]). Knowing the note has been paid and is not in the hands of a bona fide purchaser for value is, therefore, essential to keep the trustee free of liability.

■ Standard practice established by the record in this case and noted by text writers generally is for the trustee to require the presentation of the original note. (Cal. Land and Security Development (Cont. Ed. Bar 1960) § 13.2, p. 307; 1 Miller & Starr, Cal. Real Estate (rev.)

---

recorder in which the mortgage is recorded. The mortgagee shall then deliver upon the written request of the mortgagor or the mortgagor's heirs, successors, or assignees, as the case may be, the original note and mortgage to the person making such request.

"(b) When the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note and deed of trust and a request for a full reconveyance to be executed by the trustee. The trustee shall execute and shall record or cause to be recorded, except as provided in subdivision (c), such full reconveyance in the office of the county recorder in which the deed of trust is recorded. The trustee shall then deliver, upon the written request of the trustor or the trustor's heirs, successors, or assignees, as the case may be, the original note and deed of trust to the person making such request.

"(c) The mortgagee or trustee shall not record or cause to be recorded such certificate of discharge or full reconveyance where (1) the mortgagee or trustee has received written instructions to the contrary from the mortgagor or trustor, or the owner of the land, as the case may be, or from the owner of the obligation secured by the deed of trust, his agent or escrow, or (2) such certificate of discharge or full reconveyance is to be delivered to the mortgagor or trustor, or the owner of the land, as the case may be, through an escrow to which such mortgagor, trustor, or owner is a party.

"(d) The violation by a beneficiary, trustee, or mortgagee, or assignee thereof, of any provision of this section shall make the beneficiary, trustee, or mortgagee, or assignee thereof, liable to the trustor or mortgagor, or the owner of the land, as the case may be, or such person's grantees or heirs, for all damages which any of such persons may sustain by reason of such violation, and shall also forfeit to any of such persons the sum of three hundred dollars ($300).

"(e) The trustee, beneficiary or mortgagee may charge a fee to the trustor or mortgagor, or the owner of the land, as the case may be, for all services rendered in connection with the preparation, execution or recordation of a full reconveyance, or request for a full reconveyance, or certificate of discharge of a mortgage. Such fee may be made payable in advance of the performance of any services required by this section."

§ 3.76, p. 466; 2 Ogden's Rev. Cal. Real Property Law, § 17.61, p. 936.) By the terms of the note and the deed of trust, and in the face of liability for improper transfer, the trustee is justified in demanding the original note.

■ Where the original note is lost or destroyed, however, the parties are faced with a difficult problem.

The law is settled in California that where a negotiable promissory note is lost or destroyed, proof of its destruction is not enough to protect the maker. The person paying off the obligation has a right to the note and it is unjust to force the risk of the note's reappearance upon a party totally innocent of fault, and who has not bargained with a view to any mischance which may in the future result in his injury (*Welton* v. *Adams & Co.,* 4 Cal. 37, 40-41). The negligence or misfortune of the holder ought not to give him the right of casting such a burden upon the maker (*ibid.,* at p. 41).

Requiring security as a condition of cancelling of record a lost mortgage or lien has been held proper in at least one other state (*Hope* v. *Hicky* (1948) 213 La. 966 [36 So.2d 5, 2 A.L.R.2d 1062]; cf. *Lacoste* v. *Hickey,* 203 La. 794 [14 So.2d 639]). ■ We hold by way of analogy it is proper for the trustee to demand and obtain adequate indemnity before being required to execute a reconveyance of its interests where the original note is not delivered marked paid.

In the case at bar, the Bank, as trustee, insisted on receiving an indemnity bond by a corporate surety rather than the proffered private indemnity agreement.

In the case of *Price* v. *Dunlap,* 5 Cal. 483, 484, the rule of *Welton* v. *Adams & Co., supra,* 4 Cal. 37, was affirmed for the protection and safety of the commercial community, holding the party to whom the note is made must accept tendered indemnity or state why it is insufficient so that the maker could comply with his demand. This principle has not been overruled in more recent authority and we believe it equally applicable to the trustee who finds himself in the same position as the maker.

In the case at bar, the Bank, as trustee, advised the parties exactly what was required so they could comply, and we are called upon to determine if its demand for a corporate surety bond was reasonable.

■

■ An indemnity agreement by individuals differs markedly from an indemnity bond by a corporate surety. First and foremost is the fact that the life of a signator to an indemnity agreement is uncertain and on his death claims against the estate must be asserted or they may be lost. The party seeking to assert the protection afforded by the agreement would be compelled to maintain a constant vigil on the life of the indemnitor, know his residence and, in the event of his death, obtain the information about any probate proceedings instituted.[2] The life of a corporate surety, on the other hand, continues indefinitely and successors in interest are easily traced.

Second, the financial ability of the individual indemnitor is not always known or established and, even if it were, could change with the fortunes of time. The real value of the agreement may be lost. More importantly, there is no control over the indemnitor to assure his investments will be prudently managed. The corporate surety, on the other hand, must maintain certain paid-in capital and surplus (see Ins. Code, § 12050 et seq.), and is closely regulated in policy matters by the Insurance Commissioner of the State of California (Ins. Code, § 1170 et seq.). The law of California gives the person holding an indemnity bond executed by a corporate surety protection with minimum supervision or followup expense. Thus the trustee need not assume this burden simply because of the fault of another who lost the document. In absence of its fault, the Bank should not be saddled with such an obligation. ■ We find it reasonable for a trustee to insist on a corporate surety indemnity bond for his own protection prior to the execution of a trust deed reconveyance where the original note has not been delivered up for proof of discharge.[3] In view of the obvious differences in the indemnity agreement as opposed to a corporate surety bond, it was unnecessary for the Bank to detail any "reasons" why it

---

[2]The period of time such attention would be required is undeterminable. If an extension of time were granted for payment of the note, the statute of limitations might not begin for many years and would not be within the knowledge of the present beneficiaries or trustee.

[3]We note with interest the text writers on the subject uniformly suggest alternate methods which the trustor and beneficiary may use to avoid the costs normally accompanying securing such a corporate surety bond. The parties may request the trustee assign his interest to another who would be willing to assume the risk. This is usually accomplished by the beneficiary taking the assignment since he is responsible for the loss and has the best knowledge the note has been paid. This procedure should entail little or no financial burden. (See Civ. Code, § 2934a; and see *Pacific S. & L. Co. v. N. American etc. Co.,* 37 Cal.App.2d 307 [99 P.2d 355].) A second suggestion is a quiet title action be instituted to secure a court determination no such liability exists and through which the trustee may be freed of liability

wanted the corporate form of surety protection or make inquiry of the sufficiency of the proffered indemnity agreement of individuals. The Bank did not violate the terms of the trust deed nor did it violate the provisions of Civil Code section 2941, and judgment must be reversed as it imposes liability on the Bank either under the complaint or the cross-complaint.

We are next called upon to determine whether the assessment of attorney's fees, as it imposes liability against the parties, is proper under the facts of this case.

■ A bank which holds itself out as being available to act as trustee on a deed of trust and which provides the forms for such a transaction is a party to the trust. The deed of trust is an agreement between three parties, to wit, a trustor (usually the debtor), the trustee (a neutral party), and the beneficiary (usually a creditor) (*Lupertino v. Carbahal,* 35 Cal.App.3d 742, 747-748 [111 Cal.Rptr. 112]).

It is hornbook law a person who holds himself out as offering a service cannot complain if in reliance thereon another accepts the offer and agrees to the terms. Such a person becomes a party without being a signator. Here the Bank offered the service of which the parties availed themselves and, using the forms provided by the Bank, the parties designated the Bank trustee. When the parties accepted the terms by due execution of the deed of trust, the Bank became a party bound by the terms of the instrument it authored. Should the Bank fail to observe the terms and conditions of the trust or the obligations of a trustee imposed by law, it will be held liable for damages flowing from the breach of contract.

■ Under Civil Code section 1642, it is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract (see *Cadigan v. American Trust Co.,* 131 Cal.App.2d 780, 784 [281 P.2d 332]). Thus a note, mortgage and agreement of sale constitute one contract where they are a part of the same transaction (*Nevin v. Salk,* 45 Cal.App.3d 331, 338 [119 Cal.Rptr. 370]).

The deed of trust here executed as part of the same sales transaction contains language which incorporated the note into that instrument so that the language of all documents may be deemed part of a single transaction.

■ The note executed by Huckells provided the makers would pay attorney's fees fixed by the court "if action be instituted on this note." Civil Code section 1717 now gives reciprocal rights under those circumstances to all parties (*T.E.D. Bearing Co.* v. *Walter E. Heller & Co.,* 38 Cal.App.3d 59, 63 [112 Cal.Rptr. 910]). The action by Huckells on the note and deed of trust here gives the prevailing party attorney's fees as an item of costs. The "prevailing party" is the party in whose favor final judgment is rendered (*Gray* v. *Kay,* 47 Cal.App.3d 562, 564 [120 Cal.Rptr. 915]). Since judgment quieting title was entered, Huckells' status as a prevailing party was not an issue before the court; there was a judgment favoring Huckells. While they are clearly the prevailing parties, there were two parties defendant and we must determine who they prevailed against.

As we have determined, the Bank did nothing wrong in insisting on the indemnity bond by a corporate surety and judgment against it for damages was improper. There is nothing in the record to indicate it resisted Huckells' quiet title action other than to put in issue those matters of which it had no knowledge or which were contrary to the apparent interests of record. The quiet title action was required by reason of the inability of the beneficiaries to deliver the original note as required under the terms of the agreement. They alone occasioned Huckells' action.

Civil Code section 2941, subdivision (a),[4] requires the beneficiary to deliver to the trustor the original note paid or satisfied. The breach of the requirement caused the need for this quiet title action so it can only be said Huckells prevailed against the beneficiaries and, pursuant to the terms of the note, attorney's fees should be allowed only as against them. Recovery of fees on the contract as against the Bank on either the complaint or cross-complaint was not proper.

We leave intact that portion of the judgment which gives attorney's fees to Huckells as against the beneficiaries. Such award, however, is made pursuant to the terms of the contract.

■ As it applied here, Civil Code section 2941, subdivision (a), authorized damages and a penalty for the beneficiaries' failure to perform certain duties. The failure to deliver the *note* is not one of those duties for purposes of the damages and penalty provisions. A separate sen-

---

[4]See footnote 1 for language of section 2941.

tence, stated after the authority for imposing liability for damages and a penalty, requires the beneficiary to deliver the note. We can only construe this to mean the beneficiary is liable for special damages, ordinarily not including attorney's fees (Code Civ. Proc., § 1021; *Reid v. Valley Restaurants, Inc.* 48 Cal.2d 606, 610 [311 P.2d 473]), for his failure to deliver the note. There is no statutory penalty imposed for the beneficiary's failure to deliver the note and the judgment must be reduced accordingly.

The judgment is reversed as against Bank of America National Trust and Savings Association on both the complaint and the cross-complaint insofar as it awards attorney's fees and penalty, and is modified as against Mary Jane Matranga, individually and as conservator of the person and estate of Nell P. Zick, and Emmett W. Horton to reduce the award by the amount of $300 allowed as a penalty pursuant to Civil Code section 2941. In all other respects, the judgment is affirmed.

Brown (Gerald), P. J., and Work, J.,* concurred.

A petition for a rehearing was denied December 20, 1979.

---

*Assigned by the Chairperson of the Judicial Council.